UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

OCTAVIO LAYATA HERNANDEZ,

Petitioner,

v.

JULIO HERNANDEZ, *et al.*,

Respondents.

CASE NO. 2:26-cv-01574-GJL

ORDER GRANTING PETITION
FOR WRIT OF HABEAS CORPUS

Petitioner Octavio Layata Hernandez is currently detained by U.S. Immigration and Customs Enforcement ("ICE") at the Northwest ICE Processing Center ("NWIPC") in Tacoma, Washington. Dkt. 1. On May 8, 2026, Petitioner, through counsel, filed a Petition for writ of habeas corpus under 28 U.S.C. § 2241, seeking immediate release from immigration detention. *Id.* Respondents to the Petition include Julio Hernandez (Acting Field Office Director for ICE's Seattle Field Office), Todd Blanche (Acting U.S. Attorney General), Bruce Scott (Warden of the NWIPC), U.S. Department of Homeland Security ("DHS"), and Markwayne Mullin (DHS Secretary) (collectively "Respondents").[1] The Petition is fully briefed. Dkts. 1, 7, 10.

---

[1] The parties have consented to proceed in this matter before a United States Magistrate Judge. Dkt. 5.

ORDER GRANTING PETITION FOR WRIT OF
HABEAS CORPUS - 1

Having considered the parties' submissions, the balance of the record, and the governing law, the Court **GRANTS** the Petition (Dkt. 1) and **ORDERS** Petitioner's immediate release as set forth in the conclusion below.

## I.   FACTUAL BACKGROUND

In this matter, Petitioner challenges the legality of his current detention following a court-ordered bond hearing held pursuant to 8 U.S.C. § 1226(a). Unless noted, the parties generally agree as to the underlying facts of the case as summarized below.

**A.   Immigration Background**

Petitioner is a native and citizen of Mexico who has resided in the United States for approximately two decades. Dkt. 1 at ¶¶ 21–22; Dkt. 2-1 at 5, 94, 100; Dkt. 2-2; Dkt. 9 at ¶ 3.

**B.   Personal and Familial Circumstances**

Prior to his detention, Petitioner resided with his family in Omak, Washington, in a home that he owns with his wife and two United-States citizen children. Dkt. 1 at ¶ 23; Dkt. 2-1 at 5–6, 13–18, 26–35, 88–91.

Prior to his detention, Petitioner worked as a self-employed mechanic and was the primary caregiver for his children. Dkt. 1 at ¶¶ 22–23; Dkt. 2-1 at 88–91. Petitioner's wife is a recipient of Deferred Action for Childhood Arrivals ("DACA"), is employed full-time and is continuing her studies in early childhood education. Dkt. 1 at ¶¶ 22–23; Dkt. 2-1 at 21–28, 69–78, 88–89. Petitioner's wife and children have been diagnosed with various medical conditions that require ongoing care, treatment, and support. Dkt. 1 ¶ 23; Dkt. 2-1 at 46–59, 65–68, 88–91; Dkt. 2-3 at 5.

Petitioner has longstanding ties to his community, is an active member of his church, and enjoys the support of family, friends, and community members. Dkt. 1 at ¶ 23; Dkt. 2-1 at 88–109; Dkt. 2-3 at 4–5.

With the exception of a single criminal charge and conviction for Driving Under the Influence ("DUI") more than seventeen years ago, the Petitioner has no other criminal history. Dkt. 1 at ¶ 24; Dkt. 2-1 at 6, 110–15; Dkt. 2-2; Dkt. 9 at ¶¶ 4–5.

**C.      Circumstances of Immigration Arrest and Detention**

Border Patrol agents arrested Petitioner following a traffic stop in February 2026. Dkt. 1 at ¶ 25; Dkt. 2-2; Dkt. 9 at ¶ 6. The Form I-213 prepared following the arrest records that Petitioner's vehicle "attempted to elude [the BP agents] and take Hwy 7 southbound," and that BP agents subsequently "activated the emergency lights and audible siren in a safe area where the vehicle could be stopped" and conducted an immigration inspection on Petitioner. Dkt. 2-2 at 6. During the inspection, the Form I-213 records that Petitioner was compliant with BP agents and admitted he was present without lawful status in the United States. *Id.* Petitioner was thereafter arrested, taken into immigration custody, and detained at the NWIPC, where he remains. Dkt. 1 at ¶ 2; Dkt. 9 at ¶¶ 8, 18.

**D.      Prior Habeas Proceedings**

On March 19, 2026, Petitioner filed a petition for habeas seeking relief pursuant to his membership in the Bond Denial Class in *Rodriguez Vazquez v. Bondi*, 779 F. Supp. 3d 1239 (W.D. Wash. 2025). Dkt. 2-2 at 161–73. On March 27, 2026, the United States District Court granted the petition, concluding that Petitioner's detention without due process violated the Immigration and Nationality Act ("INA") and ordered Respondents to either release Petitioner or provide him with a bond hearing under 8 U.S.C. § 1226(a). *Id.* at 161–64.

**E.      Court-Ordered Bond Hearing**

On April 1, 2026, Petitioner appeared for a bond hearing before Immigration Judge ("IJ") John O'Dell. Dkt. 1 at ¶ 26; Dkt. 8-4; Dkt. 2-3. Petitioner was represented by counsel and, in advance of the hearing, he submitted extensive evidence concerning his residence,

ORDER GRANTING PETITION FOR WRIT OF
HABEAS CORPUS - 3

homeownership, familial circumstances, employment history, community support, sponsors, and criminal history. Dkt. 1 ¶ 27; Dt. 2-1. Respondents submitted the Form I-213 prepared following Petitioner's arrest by immigration officials. Dkt. 2-2; Dkt. 2-3 at 4.

Following the hearing, IJ John Odell denied bond and concluded that Petitioner had not demonstrated that he was not a flight risk. Dkt. 1 at ¶¶ 28–29; Dkt. 9 ¶ 12. The initial bond decision was issued on a checkbox order indicating that the IJ denied the bond, that Petitioner failed to show he was not a flight risk, that conditional release was denied, and that Petitioner's ability to pay was considered. Dkt. 8-4. Petitioner reserved appeal. *Id.*

On May 4, 2026, the IJ issued a written memorandum further detailing the bond decision reached on April 1, 2026. Dkt. 2-3. The IJ first outlined the legal standards governing bond determinations, including the factors relevant to assessing flight risk and danger, and noted that a respondent's ability to pay must also be considered. *Id.* at 3–4. The IJ then summarized the evidence submitted by the parties, including Petitioner's evidence regarding his residence, family ties, employment history, medical circumstances, community support, sponsors, and criminal history, as well as Respondents' submission of the Form I-213. *Id*. at 4.

The IJ further summarized Petitioner's circumstances, noting that Petitioner last entered the United States in 2002, resides with his wife and two United States-citizen children, owns a home in Omak, Washington, works as a mechanic, has community support, and has lawful permanent resident sponsors willing to assist him upon release. *Id.* at 5. The IJ also noted that Petitioner's wife and children experience various medical conditions, that Petitioner's spouse is employed full-time, that Petitioner is the primary caregiver for their children, and that Petitioner sought cancellation of removal as his sole form of relief from removal. *Id.*

The IJ assessed that Petitioner possessed equities in the United States, including his spouse and children, work history, community ties, and support network. *Id.*  Nevertheless, the IJ

ORDER GRANTING PETITION FOR WRIT OF
HABEAS CORPUS - 4

concluded that Petitioner was "a very poor bail risk." *Id.* at 5. In support of that conclusion, the IJ relied on Petitioner's limited opportunities for relief from removal, his 2009 driving-under-the-influence conviction, and allegations that he attempted to elude immigration officers during his immigration arrest. *Id.* at 5.

The IJ further concluded that no amount of bond or conditions of release would reasonably ensure Petitioner's appearance at future proceedings and denied bond and conditional parole. *Id.* These conclusions were not accompanied with any discussion of possible conditions or why such conditions or bond amount would be insufficient to ensure Petitioner's appearance.

**F.     Removal Proceedings and Current Posture**

Petitioner applied for cancellation of removal in April 2026. Dkt. 9 at ¶ 13. In May 2026, an IJ denied relief and ordered Petitioner removed to Mexico. Dkt. 1 at ¶ 31; Dkt. 9 at ¶ 16. Petitioner filed an appeal, which remains pending. Dkt. 31; Dkt. 9 at ¶ 17.

## II.     PROCEDURAL BACKGROUND

Petitioner initiated this action on May 8, 2026, by filing a federal habeas Petition and supporting materials. Dkt. 1; Dkt. 2, 2-1 through 2-3. Respondents filed a Return and supporting materials on May 26, 2026. Dkt. 7; Dkts. 8, 8-1 through 8-5; Dkt. 9. Petitioner filed a timely Reply. Dkt. 10. Thus, this matter is now fully briefed and ready for consideration by the Court.

## III.     HABEAS STANDARD

Federal courts have authority to grant writs of habeas corpus to individuals in custody if such custody is a "violation of the Constitution or laws or treaties of the United States[.]" 28 U.S.C. § 2241(c)(3). "[T]he essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and...the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973). To obtain habeas relief, habeas petitioners have the burden of demonstrating there is no lawful basis for their detention by a

ORDER GRANTING PETITION FOR WRIT OF
HABEAS CORPUS - 5

preponderance of the evidence. *Davis v. Woodford*, 384 F.3d 628, 638 (9th Cir. 2004); 28 U.S.C. § 2241(c).

## IV.   DISCUSSION

Petitioner alleges his continued detention bears no reasonable relation to mitigating risk of flight and therefore violates the process due under 8 U.S.C. § 1226 and the United States Constitution. Dkt. 1. Petitioner further alleges that no reasonable adjudicator presented with the facts and circumstances of his case would conclude, as IJ Odell did, that Petitioner presents a risk of flight and that no condition or combination of conditions would abate that risk. *Id.*

Respondents contend that Petitioner's challenges to the IJ's bond determinations should be dismissed for failure to exhaust administrative remedies available through the BIA. Dkt. 7 at 4–7. Respondents argue further that the IJ's bond determination was lawful and that any challenges to the manner in which the IJ weighed the evidence in Petitioner's case fall outside the Court's subject matter jurisdiction. *Id.* at 7–12.

As set forth below, the Court finds that IJ Odell abused his discretion and violated Petitioner's due process rights in denying bond, which falls squarely within the subject matter jurisdiction of this Court. In reaching this conclusion, the Court waives the prudential exhaustion requirement in light of Petitioner's individualized showing of irreparable harm as permitted by *Laing v. Ashcroft*, 370 F.3d 994, 1000 (9th Cir. 2004). The Court also does not reweigh evidence and adheres closely to recent decisions reviewing IJs' bond determinations within this Court and other federal district courts.

### A.   Subject Matter Jurisdiction

In general, the Court does not have jurisdiction to review discretionary bond decisions. On this point, 8 U.S.C. § 1226(e) provides that:

ORDER GRANTING PETITION FOR WRIT OF
HABEAS CORPUS - 6

The Attorney General's discretionary judgment regarding the application of this section shall not be subject to review. No court may set aside any action or decision by the Attorney General under this section regarding the detention of any [noncitizen] or the revocation or denial of bond or parole.[2]

"That provision does not, however, preclude habeas jurisdiction over constitutional claims or questions of law." *Hernandez v. Sessions*, 872 F.3d 976, 987 (9th Cir. 2017) (cleaned up). "Claims that the discretionary bond process itself was constitutionally flawed are cognizable in federal court on habeas because they fit comfortably within the scope of [28 U.S.C.] § 2241." *Id.* (cleaned up); *Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1209 (9th Cir. 2022) ("Although the IJ's discretionary bond determination was not reviewable in federal court…, we would have had jurisdiction under 28 U.S.C. § 2241 to consider any error of law in [a noncitizen's] agency proceedings, including any claimed due process violation."). Accordingly, "a district court has jurisdiction to review an IJ's discretionary bond denial where that bond denial is challenged as legally erroneous or unconstitutional." *Kharis v. Sessions*, Case No. 18-cv-04800-JST, 2018 WL 5809432, *4 (N.D. Cal. Nov. 6, 2018) (collecting cases).

Reviewable claims of legal error include application of the incorrect legal standard, ignoring or "seriously mischaracterizing" important facts, and irrational or unfounded application of a legal standard to an established set of facts. *Hinds v. Bondi*, No. 24-1878, 2026 WL 122480, at *2 (2d Cir. Jan. 16, 2026); *Soriano v. Hernandez*, No. 2:26-CV-00900-DGE, 2026 WL 969764, at *6 (W.D. Wash. Apr. 10, 2026) (reviewing for abuse of discretion and granting relief where IJ supplied "no rationale" for bond denial decision and none could be discerned from the record).

---

[2] "This opinion uses the term 'noncitizen' as equivalent to the statutory term 'alien.'" *Nasrallah v. Barr*, 590 U.S. 573, 578 n.2 (2020) (citing 8 U.S.C. § 1101(a)(3)).

ORDER GRANTING PETITION FOR WRIT OF
HABEAS CORPUS - 7

Claims of constitutional injury, such as procedural due process violations. are also reviewable by a district court. *W.T.M. v. Bondi*, No. 2:25-CV-02428-RAJ-BAT, 2026 WL 262583, at *4 (W.D. Wash. Jan. 30, 2026) (applying *Mathews v. Eldridge*, 424 U.S. 319 (1976)). Even in the context of these reviewable errors, however, district courts may not "review underlying factual determinations such as the IJ's factfinding on credibility," their "weighing of the evidence," or the IJ's "logic…in drawing inferences" from the evidence. *Hinds*, 2026 WL 122480, at *2.

In the instant Petition, Petitioner argues his current detention is unconstitutional because the IJ relied on evidence that could not support bond denial as a matter of law and procedural defects pervaded his bond proceedings. *See* Dkt. 1. Thus, contrary to Respondents' assertion, Petitioner's challenge goes beyond "second-guess[ing]" discretionary determinations by IJ Odell. Dkt. 7 at 12. Rather, Petitioner challenges whether that discretion was *abused* such that the IJ's bond decision and Petitioner's resulting detention are unlawful; these claims fall squarely within this Court's subject matter jurisdiction.

**B.      Prudential Exhaustion**

"On habeas review under § 2241, exhaustion is a prudential rather than jurisdictional requirement." *Singh v. Holder*, 638 F.3d 1196, 1203 n.3 (9th Cir. 2011). That is, the necessity of administrative exhaustion in § 2241 actions is governed by sound judicial discretion. *McCarthy v. Madigan,* 503 U.S. 140, 144 (1992), *superseded by statutory amendment as noted in Booth v. Churne*r, 532 U.S. 731, 738 (2001). Nevertheless, "[p]rudential limits, like jurisdictional limits and limits on venue, are ordinarily not optional." *Castro-Cortez v. INS*, 239 F.3d 1037, 1047 (9th Cir. 2001), *abrogated on other grounds by Fernandez-Vargas v. Gonzales*, 548 U.S. 30, 35–36, n.5 (2006).

ORDER GRANTING PETITION FOR WRIT OF
HABEAS CORPUS - 8

To determine whether prudential exhaustion is appropriate, courts consider the following factors, often referred to as the *Puga* factors: (1) whether "agency expertise makes agency consideration necessary to generate a proper record and reach a proper decision," (2) whether "relaxation of the requirement would encourage the deliberate bypass of the administrative scheme," and (3) whether "administrative review is likely to allow the agency to correct its own mistakes and to preclude the need for judicial review." *Puga v. Chertoff*, 488 F.3d 812, 815 (9th Cir. 2007) (quoting *Noriega-Lopez v. Ashcroft*, 335 F.3d 874, 881 (9th Cir. 2003)). That is, under the *Puga* factors, courts should require administrative exhaustion where it would aid in developing a more complete factual record for federal judicial review, prevent forum shopping, and conserve federal judicial resources by permitting agencies to correct their own mistakes where they are likely to do so.

Even if the *Puga* factors weigh in favor of prudential exhaustion, a petitioner may avoid the requirement by demonstrating any one of the following *Laing* factors apply in their case: (1) "administrative remedies are inadequate or not efficacious," (2) "pursuit of administrative remedies would be a futile gesture," (3) "irreparable injury will result," or (4) "the administrative proceedings would be void." *Laing*, 370 F.3d at 1000 (quoting *S.E.C. v. G.C. George Sec., Inc.*, 637 F.2d 685, 688 (9th Cir. 1981)); *see Aden v. Nielsen*, No. 2:18-cv-1441-RSL, 2019 WL 5802013, at *2 (W.D. Wash. Nov. 7, 2019) ("The party moving the court to waive prudential exhaustion requirements bears the burden of demonstrating that at least one of these *Laing* factors applies.") (citing *Ortega-Rangel v. Sessions*, 313 F. Supp. 3d 993, 1000 (N.D. Cal. 2018)).

In this case, even if exhaustion were required, waiver of that requirement is warranted by at least one of the *Laing* factors. Namely, Petitioner has shown that irreparable injury would result if he were to continue in immigration detention while pursuing administrative remedies

ORDER GRANTING PETITION FOR WRIT OF
HABEAS CORPUS - 9

through the BIA. *See Scott v. Wamsley*, Case No. 2:25-cv-1819, 2025 WL 3514304, at *4 (W.D. Wash. Dec. 8, 2025) ("Courts in this Circuit have regularly waived exhaustion requirements for noncitizens who face 'irreparable injury' from being detained for 'months without a bond hearing, and where several additional months may pass before the BIA renders a decision on a pending appeal.'").

The record reflects that Petitioner has resided in the United States for over two decades and, prior to his detention, lived with his wife and two United States-citizen children in a home he owns in Omak, Washington. Dkt. 1 at ¶¶ 22–23; Dkt. 2-1 at 3–6, 14–18, 88. Petitioner worked as a self-employed mechanic and served as the primary caregiver for his children while his wife worked full-time outside the home. Dkt. 1 at ¶ 23; Dkt. 2-1 at 3–6, 88. In addition to providing care for his children, Petitioner's support within the household enabled his wife to maintain full-time employment while furthering her education. Dkt. 2-1 at 3–6, 69–78, 88.

The record further reflects that Petitioner's wife and his children experience ongoing medical conditions which benefit from his presence, care, and support. In particular, Petitioner's wife has hyperthyroidism and requires medication, Petitioner's eldest daughter experiences anemia and spinal issues, and Petitioner's younger daughter suffers from ongoing hormonal-development concerns. Dkt. 1 at ¶ 23; Dkt. 2-1 at 3–6, 46–59, 63–68, 79–91. Petitioner's eldest daughter reports that her father's absence has been "extremely difficult" for both her and her younger sister and describes experiencing emotional distress while witnessing the effect of Petitioner's detention on the family. *Id.* at 90.

Petitioner's absence also affects his community. The record reflects that Petitioner volunteers, serves on his church's worship team, and acts as an elder within the church community. *Id.* at 89. Family members and community members further submitted letters describing Petitioner's role as a husband, father, provider, and community leader. Dkt. 2-1 at 88–

ORDER GRANTING PETITION FOR WRIT OF
HABEAS CORPUS - 10

109. Accordingly, Petitioner's continued detention while awaiting agency review would disrupt his ability to provide financial support, maintain the stability of his household, care for his children, support his wife, and continue his longstanding involvement in the community.

Although Respondents contend that Petitioner's arguments regarding irreparable harm do not warrant waiver of the exhaustion requirement, they do not actually dispute the factual underpinnings of Petitioner's argument. Dkt. 7 at 6. Thus, the Court concludes that Petitioner's uncontested factual submissions are sufficient to show irreparable harm and warrant waiver of the exhaustion requirement. *See, e.g.*, *Ortega-Rangel*, 313 F. Supp. at 1003 (exhaustion requirement waived upon petitioner's showing that continued detention would interfere with her ability to present defense in ongoing criminal prosecution and to care for her 9-year-old daughter); *Soriano v. Hernandez*, No. 2:26-CV-00900-DGE, 2026 WL 969764, at *4 (W.D. Wash. Apr. 10, 2026) (waiving exhaustion on the grounds that "[p]etitioner has dependents who rely on him financially and emotionally, and that relationship is severely negatively impacted by his continued detention.")

**C.      Merits**

Habeas courts review IJ's bond determinations for abuse of discretion. *Martinez v. Clark*, 124 F.4th 775, 779, 784–85 (9th Cir. 2024); *Anyanwu v. Bondi*, No. 25-cv-995-JLR-MLP, 2025 WL 3466910, at *4 (W.D. Wash. Oct. 6, 2025*), report and recommendation adopted*, 2025 WL 3187485 (W.D. Wash. Nov. 14, 2025). When reviewing a determination for abuse of discretion, a court may not reweigh evidence but may determine whether the IJ applied the correct legal standard. *Martinez*, 124 F.4th at 785 (citing *Wilkinson v. Garland*, 601 U.S. 209 (2024)); *Garcia Ortiz v. Henkey*, No. 1:26-cv-00043-BLW, 2026 WL 948275, at *4 (D. Idaho Apr. 7, 2026) (adding, in more colorful terms, that federal district courts are "not required to countenance a sham" when reviewing discretionary bond determinations).

ORDER GRANTING PETITION FOR WRIT OF
HABEAS CORPUS - 11

The following are factors considered by IJs in making discretionary bond determinations:

(1) whether the [noncitizen] has a fixed address in the United States; (2) the [noncitizen]'s length of residence in the United States; (3) the [noncitizen]'s family ties in the United States, and whether they may entitle the [noncitizen] to reside permanently in the United States in the future; (4) the [noncitizen]'s employment history; (5) the [noncitizen]'s record of appearance in court; (6) the [noncitizen]'s criminal record, including the extensiveness of criminal activity, the recency of such activity, and the seriousness of the offenses; (7) the [noncitizen]'s history of immigration violations; (8) any attempts by the [noncitizen] to flee prosecution or otherwise escape from authorities; and (9) the [noncitizen]'s manner of entry to the United States.

*Matter of Guerra*, 24 I. & N. Dec. 37, 40 (B.I.A. 2006); *Matter of R-A-V-P-*, 27 I. & N. Dec. 803, 805 (B.I.A. 2020). To sustain a permissible flight risk finding, any factor considered by an IJ must rationally bear on a noncitizen's likelihood to appear for immigration proceedings. *Matter of Patel*, 15 I. & N. Dec. 666, 667 (BIA 1976) (reversing flight risk finding where IJ relied on factors bearing "little if any relevance to the issue of whether or not the [noncitizen] is likely to appear for his deportation proceeding"). Further, factors should not be viewed so broadly or given such undue weight as to risk either denying release or "requiring a bond of almost every [noncitizen] who is held in deportation proceedings." *Id.* (reversing IJ's order requiring bond where evidence of criminal arrest was unclear and only other factors considered were the noncitizen's potential avenues for relief from removal, a factor likely to apply nearly universally to noncitizens pending removal).

Given the significant liberty interest at stake for noncitizens in immigration detention and the weak or non-existent governmental interest in continued detention without adequate process, courts in this and other districts have found due process violations where IJs abuse discretion in bond determinations. *See W.T.M.*, 2026 WL 262583, at *4; *Soto Gimenez v. Hernandez*, No. 2:26-CV-00966-GJL, 2026 WL 1156075, at *6 (W.D. Wash. Apr. 29, 2026) (collecting cases).

ORDER GRANTING PETITION FOR WRIT OF
HABEAS CORPUS - 12

In this case, Petitioner has satisfied his burden of demonstrating by a preponderance of the evidence that reviewable legal or constitutional errors pervaded his immigration bond proceedings and warrant the grant of habeas relief. In particular, IJ John Odell's flight-risk determination rested on three factors that do not bear a rational relationship to present-day risk of flight: (1) Petitioner's perceived limited opportunities for relief from removal; (2) Petitioner's "drunk driving history"; and (3) allegations that Petitioner attempted to "elude" Border Patrol agents prior to his immigration arrest. Dkt. 2-3 at 5–6.

The Court first considers the IJ's reliance on Petitioner's perceived likelihood of obtaining relief from removal. The BIA, this Court, and several district courts have rejected the perceived weakness of a noncitizen's available forms of relief as a rational basis for a flight risk finding. *Matter of Patel*, 15 I. & N. Dec. at 667; *Soriano,* 2026 WL 969764, at *5–6; *Loya Medina v. Hernandez*, No. 2:26-CV-00772-GJL, 2026 WL 1260848, at *2 (W.D. Wash. May 7, 2026); *Zarei v. Larose*, No. 26-CV-02335-GPC-MMP, 2026 WL 1415042, at *5 (S.D. Cal. May 19, 2026) ("[A] noncitizen's unlawful status cannot provide a legitimate consideration upon which an [IJ] may deny a request for release on bond…given that *every individual* who appears before an [IJ] for custody redetermination lacks lawful status." (quoting *Alvarado Lopez v. Dillman*, No. 25-cv-2456-LMB-LRV, 2026 WL 688958, at *6 (E.D. Va. Mar. 11, 20026) (emphasis added)). At least one such decision involved review of a bond determination issued by the same IJ whose decision is at issue here. *Loya Medina*, 2026 WL 1260848, at *2.

Further, while the IJ noted that Petitioner's cancellation-of-removal application may face obstacles because his qualifying relatives are "generally" healthy and doing well in school, the IJ did not explain how that assessment demonstrates that Petitioner is likely to abscond from future proceedings. Dkt. 2-3 at 5. Nor did the IJ reconcile this conclusion with the considerable evidence in the record demonstrating the health issues of Petitioner's family members or the

ORDER GRANTING PETITION FOR WRIT OF
HABEAS CORPUS - 13

substantial evidence of his incentives to remain and appear for immigration proceedings, including his near two decades of compliance with the laws of the United States, homeownership, family ties, employment, and stability in his community. Accordingly, this factor does not rationally support the IJ's flight-risk determination.

The Court next considers the IJ's reliance on Petitioner's DUI conviction. The record reflects a single misdemeanor conviction from 2009, approximately *seventeen years* before the bond hearing at issue in this case. Dkt. 1 at ¶ 24; Dkt. 2-1 at 110–13. The court in *Soriano* recognized that decades-old conduct bears little, if any, rational relationship to a noncitizen's present-day risk of flight. *Soriano*, 2026 WL 969764, at *5 (unauthorized reentry 25 years ago lacks objective rationale for a finding of present-day flight risk). Further, the Ninth Circuit has made clear that "criminal history alone will not always be sufficient to justify denial of bond on the basis of dangerousness. Rather, the recency and severity of the offenses must be considered." *Singh v. Holder*, 638 F.3d 1196, 1206 (9th Cir. 2011); *see also Garcia Miranda v. Hernandez*, No. 2:26-CV-00906-JNW, 2026 WL 1328227, at *4 (W.D. Wash. May 13, 2026) ("Two arrests for minor offenses from approximately two decades ago, followed by nearly twenty years of law-abiding conduct, cannot sustain a finding of dangerousness").

Where, as here, the bond denial is based solely upon flight risk, the existence of any rational connection between a decades-old, non-violent offense is unclear. *See Sandoval v. Hernandez*, No. 2:26-CV-01198-JNW, 2026 WL 1661379, at *5 (W.D. Wash. June 9, 2026) (noting that "minor" and "remote" criminal convictions could not rationally support bond denial for dangerousness or flight risk) *Perez Velasquez v. Bondi*, No. 26-CV-01759-GPC-DDL, 2026 WL 1042479, at *6 (S.D. Cal. Apr. 16, 2026) (finding abuse of discretion where IJ disregarded substantial equities and found flight risk based on noncitizen's "reliance on public assistance, driving without a license, and failure to pay taxes"). Thus, the IJ abused discretion in relying on

ORDER GRANTING PETITION FOR WRIT OF
HABEAS CORPUS - 14

Petitioner's single and historical conviction without explaining why a nonviolent offense from nearly two decades ago demonstrates a present likelihood that Petitioner would fail to appear for future immigration proceedings and that no condition or combination of conditions would reasonably ensure his appearance.

Finally, the Court considers the IJ's reliance upon allegations in the DHS Form I-213 that Petitioner attempted to elude Border Patrol agents prior to his arrest. In reviewing a prior bond denial decision by this same IJ, this Court concluded that allegations concerning isolated conduct during an arrest encounter, without more, do not establish a rational connection to present-day flight risk. *Loya Medina*, 2026 WL 1260848, at *7–8. The same conclusion is warranted here.

The DHS Form I-213 relied upon by the IJ in this case contains only the conclusory assertion that Petitioner's vehicle "attempted to elude the Border Patrol and take Highway 7 southbound." Dkt. 2-2 at 6. The Form I-213 provides no factual description of the conduct giving rise to that characterization. *Id.* Nor does it indicate whether any alleged efforts to elude occurred after agents made any obvious attempt to stop Petitioner's vehicle. *Id.* These missing factual details aside, the Form I-213 further reflects that, once Border Patrol agents activated emergency lights and an audible siren, they were able to perform an immigration inspection on Petitioner, who was described as compliant, answered agent's questions, and readily confirmed both his identity and lack of status. *Id.* Finally, like in *Loya Medina*, neither the DHS Form I-213 nor the record before the IJ indicates that Petitioner threatened officers, engaged in violence, resisted arrest, or was otherwise noncompliant at any point during the encounter.

In short, "the conduct described in the DHS Form I-213, even accepted as true, does not… rationally support the conclusion that Petitioner's continued detention was warranted." *Loya Medina*, 2026 WL 1260848, at *8; *see also Vasquez Lopez v. Hernandez*, No. C26-0775 TSZ, 2026 WL 984151, at *3 (W.D. Wash. Apr. 13, 2026) (finding abuse of discretion where IJ

ORDER GRANTING PETITION FOR WRIT OF
HABEAS CORPUS - 15

relied on conclusory allegations unsupported by the overall record). Furthermore, the remaining evidence before the IJ demonstrated that failing to appear at immigration proceedings would run counter to Petitioner's personal interests. Indeed, Petitioner's incentive to appear is considerable as failure to do so could result in further detention and separation from his wife, children, home, church, and community. Worse yet, his family would again be immediately deprived of his short-term financial assistance and caregiving. Whatever the ultimate outcome of his removal proceedings, Petitioner's ability to remain at liberty and together with his family and community provides a powerful incentive to comply with the requirements of those proceedings.

No reasonable and impartial decision-maker presented with the facts and evidence of Petitioner's case would conclude denial of bond was warranted. *See Soto Gimenez*, 2026 WL 1156075, at 8 ("Bond determinations must bear a rational relationship between the governing legal standards and the facts and evidence in a given case. Where those minimum requirements are not met, a resulting bond denial decision violates due process."). The Court therefore concludes that the IJ abused discretion in denying bond and that Petitioner's continued detention pursuant to that determination violates due process.

**V.    REMEDY**

The Court next considers the appropriate remedy. In this area, habeas courts have "a fair amount of flexibility." *Burnett v. Lampert*, 432 F.3d 996, 999 (9th Cir. 2005). As noted, "the traditional function of the writ is to secure release from illegal custody." *Preiser*, 411 U.S. at 484. "In modern habeas practice, courts often 'employ a conditional order of release,' which orders the government to release the petitioner unless it 'takes some remedial action' that corrects" the government's violation of the law. *Cardozo v. Bostock*, No. 2:25-cv-00871-TMC, 2025 WL 2592275, at *2 (W.D. Wash. Sept. 8, 2025) (quoting *Harvest v. Castro*, 531 F.3d 737, 741–42 (9th Cir. 2008)). After issuing a conditional writ, a district court retains jurisdiction to

ensure compliance with the writ and may order unconditional release if the government fails to comply with the initial habeas order. *Rose v. Guyer*, 961 F.3d 1238, 1246 (9th Cir. 2020).

The Court finds conditional release would not be an appropriate remedy here. The bond hearing at issue was conducted pursuant to a prior grant of habeas relief, in which the Court ordered Respondents to provide Petitioner with a legally sufficient custody determination. Dkt. 2-2 at 161–73. In other words, Respondents have already been afforded an opportunity to cure legal deficiencies underlying Petitioner's detention. Respondents have failed to do so.

Accordingly, the Court concludes that no further immigration bond proceedings are necessary or appropriate. Petitioner's continued detention is not supported by a lawful bond determination, and additional delay for further proceedings would not cure that deficiency. *See Harvest*, 531 F.3d at 742 ("The consequence when the State fails to replace an invalid judgment with a valid one is always release."); *see, e.g., Escalante Perez v. Hernandez*, No. C26-0956 TSZ, 2026 WL 1004559, at *2 (W.D. Wash. Apr. 14, 2026) (ordering immediate release where IJ abused discretion at court-ordered bond hearing). The Court therefore **ORDERS** Petitioner's immediate release from immigration detention.

## VI. CONCLUSION

For the foregoing reasons, Petitioner's habeas Petition (Dkt. 1) is **GRANTED** and the Court **ORDERS** as follows:

(1) Respondents **SHALL release** Petitioner Octavio Layata Hernandez from custody **IMMEDIATELY** either on his own recognizance or under conditions of supervision reasonably necessary to ensure his appearance;

(2) Respondents **SHALL** return to Petitioner any personal property, including personal identification documents (other than a passport) and employment authorization documents; and

(3) Respondents **SHALL** file a declaration within **24 HOURS** of the issuance of this Order, confirming that Petitioner has been released from custody and providing the date and time of release.

ORDER GRANTING PETITION FOR WRIT OF
HABEAS CORPUS - 17

Finally, the Court will entertain post-judgment requests for attorney's fees, as requested in the Petition. Any fee petition must be filed within the deadline set by the Equal Access to Justice Act, 28 U.S.C. § 2412.

Dated this 15th day of June, 2026.

Grady J. Leupold
United States Magistrate Judge

ORDER GRANTING PETITION FOR WRIT OF
HABEAS CORPUS - 18